IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERARD COLAGROSSI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 5471 |
| | ) | |
| UBS SECURITIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

# <u>OPINION AND ORDER</u>

Plaintiff Gerard Colagrossi asserts claims based on an alleged oral

agreement and the Illinois Wage Payment and Collection Act.  Defendant UBS

Securities LLC ("UBS") moves for summary judgment, arguing that the oral

agreement is barred by two later written employment agreements, both of which

contained integration clauses barring reliance on any earlier oral or written

agreements.

Plaintiff initiated this action by a suit filed in the Circuit Court of Cook

County, Illinois.   UBS removed the case to this court based on diversity

jurisdiction.   The court has jurisdiction of the subject matter and the parties.

28 U.S.C. § 1332.

## Facts

In 2005, plaintiff Gerard Colagrossi was running the 24-hour futures

trading desk at Man Financial, Inc.  Plaintiff's team was responsible for

generating, clearing, and executing futures trades.  Although the trading desk

primarily received orders for futures trades, it also sometimes received a different

type of order known as an exchange futures for physical trade ("EFP trade").

Unlike the normal futures trades, the EFP trades were not directly executed by the

24-hour desk, but were instead sent to an EFP dealer for execution.  Because the

EFP trade orders related to foreign exchange futures, the EFP dealer had to be

employed by a bank, and not a futures commission merchant.

Between the early 1990s and 2005, plaintiff hired, fired, and paid the

employees as he saw fit.  Plaintiff developed the 24-hour desk's client

relationships.  On occasion he used his own money to do so.

In 2005, plaintiff was approached by John Murphy, the head of ABN's

North American Futures division, about the possibility of moving to ABN.  They

met several times to discuss compensation and other terms.  All of the negotiations

occurred prior to July 29, 2005. Murphy orally offered plaintiff a base salary and a 70/30 split on commissions from futures trades. Plaintiff claims -- and defendant disputes -- that Murphy also promised that plaintiff would receive a 50% split of profits from EFP trades referred by the 24-hour desk to ABN Bank. Plaintiff claims he viewed this promise as an important factor in deciding to take the job because the EFP profits were substantial.

Plaintiff told Murphy that, at Man, he hired and fired members of his desk and that he decided how to divide commissions among team members. Murphy testified that, although it was understood that plaintiff would have control over hiring, firing, and allocations of the 24-hour desk bonus pool, plaintiff's decisions would be subject to Murphy's approval.

Based on these discussions, plaintiff decided to move his desk to ABN, and he and the other team members started working for ABN during August 2005. On October 18, 2005, plaintiff signed a written employment agreement. Plaintiff reviewed the agreement before signing it. He "believes [that he] did have a lawyer check" the agreement before he signed it, although he said that the lawyer may have checked the later employment agreement with UBS. Either way, he is certain that "there was a lawyer involved somewhere." The ABN agreement addresses

various employment issues and includes a provision for the payment of a base salary and a 70/30 split on futures commissions. It also contains an integration clause providing that any prior oral or written agreements or understandings are superseded.

Plaintiff received the base salary and 70% of futures profits as promised at ABN. He did not receive any of the profits of EFP trades that his desk had been generating. Plaintiff had conversations with Murphy complaining about the nonpayment, but Murphy (according to plaintiff) just kept giving him excuses. Murphy told him that he would do his best to make something happen, that he had discussions with a couple of individuals about trying to get payment, and that plaintiff should wait until everything was in place and that it would then all be sorted out.

In May 2006, UBS acquired ABN's futures division through a Stock and Asset Purchase Agreement. Plaintiff talked with Murphy, who would later become head of North American Futures at UBS, and Clark Hutchison, who was the managing director at UBS, about continuing his 24-hour desk with UBS. Plaintiff claims that he orally negotiated a deal with Hutchison and Murphy, which included salaries as well as a retention bonus for his desk members. He also

claims that he told Hutchison that there was an agreement with ABN Bank that he would be paid 50% of the EFP profits and that plaintiff wanted this agreement to continue. Hutchison disputes this assertion. Plaintiff claims that Hutchison said that UBS would honor for one year whatever agreements he had in place with ABN futures.

In September 2006, plaintiff entered into a written employment agreement with UBS. The 10-page agreement provides, among other things, that plaintiff was to receive a base salary and a discretionary bonus, but it does not contain any provision about EFP profits. Like the ABN employment agreement, the UBS agreement contains an integration clause barring reliance on earlier oral agreements. Plaintiff negotiated several terms in the agreement. He was able to obtain UBS agreement to shorten the non-compete clause from 6 months to 30 days and to increase his retention bonus by $25,000.

While at UBS, plaintiff was paid the compensation described in the agreement, but once again, he was not paid any EFP profits. Plaintiff states that he talked to Murphy and two others about the lack of payment. They told him they would look into the issue, but nothing was ever resolved.

In his first year at UBS, plaintiff was allowed to allocate the bonus pool money among the 24-hour desk employees. However, plaintiff's allocations were subject to approval of UBS supervisors. In August 2007, two desk employees (Wulffleff and Tye) transferred to another UBS division. Murphy told plaintiff to allocate some of the September pool money to them even though they did not work at the 24-hour desk that month. Murphy believed they introduced business to the desk, and he did not want plaintiff retaliating against them for moving to another UBS division. The amount Murphy asked to be allocated to them was consistent with what plaintiff had given them for the two prior months. Plaintiff did not want to allocate any money to them and believed he had an unfettered right to decide how such allocations should be made.

On September 27, 2007, UBS informed plaintiff that it was terminating his employment effective October 11, 2007. Plaintiff was an at-will employee. The record does not reflect why he was terminated. In this lawsuit, he does not raise any challenge to his termination.

## Argument

Plaintiff asserts a claim for breach of contract and a claim for violation of the Illinois Wage Payment and Collection Act. Both claims are based on oral

promises originally made by John Murphy in August 2005 when he was negotiating concerning moving the 24-hour desk from Man to ABN and then later when he and Hutchison allegedly promised plaintiff that he could work at UBS under the same agreements he had with ABN. Plaintiff seeks two forms of compensation. First, he wants to be paid 50% of the EFP profits. This amount is over a million dollars. Second, he seeks the September bonus pool money Murphy made him pay to Wulffleff and Tye. This is approximately $70,000.

Although UBS disputes that Murphy or Hutchison made any oral promises, it recognizes that for purposes of summary judgment this is a fact question and it must accept plaintiff's version of the facts. UBS bases its summary judgment motion on the integration clauses in the two written employment agreements: the October 2005 ABN agreement and the September 2006 UBS agreement.

### First Employment Agreement

The ABN agreement is governed by Illinois law. The parties agree on the basic contract principles to be applied. Under Illinois law, consistent with general contract law, the court's primary goal is "to give effect to the parties' intent as expressed in the terms of their written agreement." ***Lewitton v. ITA***

***Software, Inc.***, 585 F.3d 377, 379 (7th Cir. 2009). Illinois courts apply the "four

corners" rule. ***Air Safety, Inc. v. Teachers Realty Corp.***, 706 N.E.2d 882, 884 (Ill.

1999). Under this rule, the court looks at the contract language to see if it is

facially ambiguous. ***Id.*** This determination is made without looking at any parol

evidence. ***Id.*** If the parties include in the contract an integration clause (*i.e.*, a

clause stating that the written agreement is complete and final and reflects the

entire understanding of the parties), then they are "explicitly manifesting their

intention to protect themselves against misinterpretations which might arise from

extrinsic evidence." ***Id.*** at 885. An integration clause "makes clear that the

negotiations leading to the written contract *are not* the agreement." ***Id.*** (emphasis

in original). When there is an integration clause, "it is particularly unavailing for

[one party] to attempt to cloud the contract's interpretation with post-hoc

explanations of its state of mind at the time the contract was inked." ***Lewitton***,

585 F.3d at 381.

The ABN employment agreement contains the following integration

provision:

> This agreement contains the entire understanding of the
> parties regarding the subject matter hereof and no terms,
> including compensation terms, may be modified except by a
> document signed by the parties, acknowledged by a human

> resources representative, and referring explicitly hereto. You
> acknowledge that you have not relied on any oral or written
> representations or understandings not explicitly contained
> herein in executing this agreement. This document
> supercedes any and all oral or written understandings
> regarding your employments with ABN AMRO or any of its
> affiliates.

Def. Exh. L at 3.

This provision, by its plain terms, precludes any reliance on the oral

promises made by Murphy a few months before this agreement was signed. It

explicitly refers to "compensation terms." In his response brief, plaintiff describes

both of the two promises at issue as relating to the issue of compensation. *See* Pl.

Resp. at 3 ("the compensation [plaintiff] now seeks (*i.e.* 50% of ABN Bank's

profits generated from the EFP trades Plaintiff introduced to ABN Bank and

control over the allocation of his Desk's bonus pool)."). More broadly, the

provision precludes reliance on any oral agreements relating to the "subject

matter" of the agreement. The subject matter, as set forth in the first sentence of

the agreement, is the "terms for [plaintiff's] employment with ABN AMRO

Incorporated." This point is confirmed by the various employment issues

addressed in the agreement, including terms about company policies, termination,

benefits, and vacation rights. The two promises in dispute clearly fall within the

general subject of plaintiff's employment. Thus, even if Murphy and plaintiff reached an oral agreement in August 2005, the agreement was superseded by the October 2005 written agreement. *See, e.g.*, ***Beard v. The Prudential Ins. Co. of Am.***, 2002 WL 548727 *5 (N.D. Ill. Apr. 8, 2002) (granting summary judgment to employer on sales manager's claim for breach of an oral employment agreement because, even if the oral agreement was made, it does not make the later written agreement ambiguous).

Plaintiff raises two basic arguments to avoid the plain language of the integration provision. He first argues that there are actually two separate and distinct agreements, one with ABN Futures and one with ABN Bank. According to this theory, when Murphy made the oral compensation promises in 2005, he was acting as an agent for two different ABN entities. *See* Pl. Resp. at 5. On behalf of ABN Futures, Murphy offered plaintiff a base salary and 70% commissions on futures trades. This promise was later incorporated into the written employment agreement. On behalf of ABN Bank, Murphy allegedly offered plaintiff 50% of EFP profits. This promise was never reduced to a written agreement. Plaintiff argues that the latter promise has "nothing to do with" the provisions in the ABN

written employment agreement and, for this reason, the integration provision does not override the oral agreement with ABN Bank. Pl. Resp. at 1.

This argument is insufficient to avoid summary judgment. As a factual matter, there is no concrete evidence that Murphy was simultaneously wearing two corporate hats, making certain promises for ABN Futures and then making others just for ABN Bank. There was one set of negotiations, with one person representing ABN, regarding one issue: whether plaintiff would work for ABN. Plaintiff has not claimed that Murphy said anything to the effect that two separate agreements would be required. Plaintiff in his response brief describes the promise to pay EFP profits as being a "part" of one larger agreement. *See* Pl. Resp. at 5 ("Plaintiff told Murphy that the would not move his desk from Man Financial to ABN Futures unless EFP profit sharing was *part of the agreement*.") (emphasis added). This suggests he also anticipated one agreement.

Given that the EFP trades would be executed by ABN Bank, there is nothing inherently illogical with the idea of having a separate agreement with ABN Bank. The problem for plaintiff, however, is that he has offered no evidence that Murphy or anyone else at ABN actually contemplated using this somewhat unusual, bifurcated approach. The parties could have carved out an explicit

exception to the integration provision. The EFP profits plaintiff is seeking are over a million dollars. From plaintiff's perspective, why would he be willing to proceed with just an oral agreement, based on the statements of one person in the corporation, especially if he regarded EFP profits as a substantial part of his compensation and an important reason for taking the job? Plaintiff provides no credible explanation, only stating vaguely that Murphy "never said their agreement would be memorialized in a written agreement." Pl. Resp. at 6. Plaintiff also states that the written agreement was signed two months after he started working, but he does not explain why this fact matters. He chose to sign the agreement at that time rather than quitting or insisting that ABN put in writing the promise to pay EFP profits.

Even if plaintiff had some evidence to support this theory, it would still fail for the reason that the integration clause explicitly bars earlier oral agreements with "ABN AMRO *or any of its affiliates*." (Emphasis added.) Plaintiff has not disputed that ABN Futures and ABN Bank are ABN affiliates. Accordingly, his argument that the parties anticipated that there would be a separate oral agreement with ABN Bank is foreclosed by the reference to affiliates.

Plaintiff's second argument discards the "two agreements" theory and proceeds on the assumption that the one written contract in fact includes a promise to pay EFP profits. (This argument does not apply to the promise about allocation of bonus money.) Specifically, plaintiff points to the provision in the agreement stating that he "will receive a payout of 70% of net income (excluding interest income) after execution and operational charges ($.20 per contract), direct expenses (not including draws) and management costs." Def. Exh. L at 1. According to UBS, this provision merely embodies the promise to pay the 70/30 split on commissions on regular futures trades. According to plaintiff, the phrase "net income" is ambiguous because it is not limited on its face to futures trades and thus arguably could also include EFP trades. Plaintiff wants to present parol evidence to define what he believes is an ambiguous phrase.

Although plaintiff is correct that parol evidence may sometimes be used to clarify an ambiguous provision, this rule does not help him here because even if the phrase "net income" is ambiguous, no one could reasonably interpret it to include a promise to pay 50% of EFP trades. This is because this provision states that plaintiff would receive 70% of "net income." Plaintiff has consistently taken the position in this litigation that he was promised 50% of EFP trades. The

obvious discrepancy between 70% and 50% makes it impossible to interpret the
"net income" provision in a way that would help plaintiff.

The integration clause bars any claims based on Murphy's August 2005
oral promises.

### Second Employment Agreement

Although the parties devote much of their briefs to analyzing the ABN
employment agreement, plaintiff has not actually sued any ABN entity in this
litigation.  (He apparently filed a separate state court action against ABN, which is
discussed briefly below.)  The only defendant in this case is UBS.  His theory is
that the oral promises allegedly made by ABN were effectively ratified and carried
over to UBS when it told plaintiff it would honor the same agreements he had with
ABN.  The pattern here is the same as before.  Oral promises were allegedly made
and then a later written agreement was entered into which includes some (but not
all) of the oral promises.

The UBS agreement is governed by New York rather than Illinois law,
although neither side argues New York law supplies any different rules.  *See, e.g.*,
***W.W.W. Assocs. v. Giancontieri***, 77 N.Y.S.2d 157, 162 (N.Y. 1990) ("Evidence
outside the four corners of the document as to what was really intended but

unstated or misstated is generally inadmissible to add to or vary the writing.").

The UBS integration clause states:

> This agreement contains the entire understanding and
> agreement between the parties concerning the subject matter
> hereof (including any compensation arrangements), and
> supersedes all prior agreements, understandings, discussions,
> negotiations, and undertakings, whether written or oral,
> between the parties with respect thereof.

Def. Exh. P at 8-9.

The same analysis and conclusions regarding the ABN agreement are applicable to the UBS agreement. Like the ABN integration provision, the UBS provision bars earlier agreements relating to both the specific issue of "compensation arrangements," but also to any issue affecting the overall employment relationship. The wording is again clear and broad. The written agreement sets forth the "entire understanding" of the parties and supersedes all prior agreements. The facts fit the typical scenario in which corporate agent (say a salesman) orally negotiates the material terms of an agreement, but then the corporation expects that the final agreement will be set forth in writing, perhaps reviewed by its lawyers and other individuals higher up in the corporation.

The UBS agreement in some ways is even stronger than the ABN agreement. Plaintiff does not argue that there were two separate agreements, nor point to any ambiguous phrase. There is no doubt that he carefully considered the agreement and its terms because he specifically objected to two provisions (non-compete and retention bonus) and had them changed. He therefore knew how to get a provision included if he thought it was important. *See **Wright v. Chicago Title Ins. Co.***, 554 N.E.2d 511, 514 (Ill. App. Ct. 1st Dist. 1990) ("There is a strong presumption against provisions that easily could have been included in the contract but were not."). Plaintiff has many years experience in the business world, and consulted a lawyer at some point in this process. He is not unsophisticated. Perhaps most significantly, when he entered into the UBS agreement, he had the benefit of his experience with ABN. He had worked there over a year, referring EFP trades to ABN Bank which generated commissions, yet ABN never paid him a single dollar. When he asked about the problem, he only got vague answers from Murphy about "doing his best" to resolve the matter, answers plaintiff believed were "excuses." Even after complaining, no payments were forthcoming. Despite all these red flags, he chose again to rely on an oral

agreement and did not bother to ask UBS to put in writing the alleged promise to pay 50% of EFP profits.

## Illinois Wage Payment and Collection Act

The parties focused their briefs primarily on the breach of contract claim and devoted little attention to the second count under the Illinois Wage Payment and Collection Act ("IWPCA"). UBS argues that it fails for the same reason as the breach of contract claim -- namely, the alleged oral agreement is barred by the two integration clauses. Plaintiff in his response brief argues that the IWPCA permits him to recover compensation based on an informal agreement, something that falls short of being an enforceable contract. *See* Pl. Resp. at 17. However, even if the oral agreement was informal or tentative when it was made, it is undisputed that it was superseded and terminated by the two later written agreements. Regarding the bonus money, plaintiff argues that an agreement was formed by past practice. This argument is not viable because, first, it is undisputed that UBS had final approval, even if plaintiff's characterization that it was pro forma is accepted. It also fails because, as UBS points out, courts have held that the practice of paying a bonus is not enough to establish an IWPCA claim. *See, e.g.*, ***Carroll v. Merrill Lynch***, 2011 WL 1838563 *17 (N.D. Ill. May 13, 2011) (granting summary

judgment to employer on employee's IWPCA claim because "past practice itself is not enough to support a wage claim"); ***Stark v. PPM America, Inc.***, 354 F.3d 666, 672 (7th Cir. 2004) (granting summary judgment against employee because he "has no employment contract setting out the terms of his bonus" and he cannot rely on past practice to "create" an IWPCA claim); *see also* ***Brines v. XTRA Corp.***, 304 F.3d 699, 703 (7th Cir. 2002) (an employer's past practice "does not create an obligation under the principles of contract law").

Having concluded that summary judgment should be granted on both claims, this Court need not consider the alternative argument first raised by UBS in its reply brief. It notes that the Circuit Court of Cook County recently dismissed similar claims brought by plaintiff in a concurrent lawsuit against both UBS and ABN. UBS proposed that, if this Court were not inclined to grant summary judgment, it should instead stay this action under the ***Colorado River*** doctrine and wait until the state court action becomes final, at which time this Court could dismiss these claims under the doctrine of collateral estoppel. Plaintiff has not had an opportunity to reply. Given the conclusions stated above, there is no need to delay this action any further. The defendant's motion for summary judgment is granted on both counts.

IT IS THEREFORE ORDERED that defendant's motion to deem facts admitted [135] is denied. Defendant's motion for summary judgment [113] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice and awarding defendant the costs of suit.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED:  JUNE 4, 2014